UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| ADRIAN THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 18-1122 |
| | ) | |
| JAMES BLACKARD, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT ORDER

Plaintiff, proceeding pro se and presently incarcerated at Menard Correctional Center,

brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging Eighth Amendment claims for

inhumane conditions of confinement and deliberate indifference to a serious medical need. The

matter comes before this Court for ruling on the Defendants' Motion for Summary Judgment.

(Doc. 23). The motion is granted.

## LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party,

and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358

(7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue

of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine"

issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita*

*Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff was incarcerated at Pontiac Correctional Center ("Pontiac"). UMF 1. Defendants Blackard and Punke were employed at the facility as a correctional major and correctional lieutenant, respectively. UMF 3, 5.

Plaintiff was assigned to cell 504 in the West Cellhouse from October 24, 2017, until his transfer to another facility on December 22, 2017. The mattress provided in that cell "had urine and feces mildewed in it," smelled bad, and was generally in poor condition. Pl.'s Dep. 12:21-22; 15:20-22. The back of the bunk had "like a hundred dead flies," and feces "was spread on the walls by the sink in the back area of the cell, [and] on the door, too." *Id.* 22:3-6; 42:1-3. The faucet in the cell did not work.

At least two non-defendant prison officials tried to get Plaintiff a new mattress, but none were available until after Plaintiff had been in the cell for two weeks. Pl.'s Dep. 50:1-18. Plaintiff received a different mattress shortly thereafter. *Id.* Plaintiff otherwise had his own sheets, blanket, and soap available to him in his personal property. *Id.* 41:6-9; 42:6-11. An inmate worker provided Plaintiff with a pair of gloves to remove the dead flies, and Plaintiff received approximately one cup of a disinfectant solution at least seven (7) times while housed in that cell. *Id.* 52:19-23; UMF 12. Plaintiff also had a towel he could have used for cleaning, but he was not "going to touch any feces…without having the proper cleaning supplies." Pl.'s Dep. 41:10-17.

Plaintiff spoke to a correctional officer who turned on the cold water the same day Plaintiff was placed in the cell, although Plaintiff testified the water initially came out black and

oily. *Id.* 19:7-14. Plaintiff did not have hot water in the cell at any time. Defendant Blackard had submitted a work order on September 2, 2017, for repair of the hot water. (Doc. 24-6 at 1). The work order was still pending at the time Plaintiff was placed in the cell, and prison officials were apparently unable to fix it when they attempted to do so on November 29, 2017. *Id.* Plaintiff had access to a shower three times per week. UMF 13.

Plaintiff sought medical treatment on November 6, 2017, for a skin condition on his back. The certified medical technician (CMT) noted "a small clogged pore on [Plaintiff's] midback," recommended warm compresses on the affected area, and told Plaintiff to return to sick call as needed. UMF 16. Plaintiff testified that he told the CMT he could not comply with the order for warm compresses because he did not have hot water in his cell. Pl.'s Dep. 32:19-23.

A correctional officer present during Plaintiff's exam attempted to find another cell for Plaintiff, but the only available cell did not have a working toilet. *Id.* 38:2-7. Plaintiff received hot water for warm compresses from another inmate after the inmate heard Plaintiff explain this problem to correctional officers. *Id.* 53:13-15. Plaintiff did not seek further medical treatment for this condition while at Pontiac. UMF 16. Medical staff at Menard Correctional Center ("Menard") diagnosed Plaintiff's skin condition as dermatitis[1] and prescribed ointment. UMF 19. Plaintiff's condition improved with this treatment. UMF 20, 21.

Plaintiff asserts he told Defendants Blackard and Punke of the conditions in his cell via a letter given to another correctional officer on November 9, 2017, but he has not provided a copy

---

[1] "Dermatitis is a general term that describes a skin irritation. Dermatitis is a common condition that has many causes and occurs in many forms. It usually involves itchy, dry skin or a rash on swollen, reddened skin. Or it may cause the skin to blister, ooze, crust or flake off. Examples of this condition are atopic dermatitis (eczema), dandruff and contact dermatitis." Dermatitis, Mayo Clinic, available at: https://www.mayoclinic.org/diseases-conditions/dermatitis-eczema/symptoms-causes/syc-20352380 (last accessed Feb. 21, 2020). For authority for searching the internet for information, see *Rowe v. Gibson*, 798 F.3d 622 (7th Cir. 2015).

of this letter. Pl.'s Dep. 58:6. Plaintiff testified that Defendants told him in response to stop complaining. *Id.* 57:13-16.

## ANALYSIS

### Conditions-of-Confinement Claim

A prison official violates the Eighth Amendment if he or she denies a prisoner his or her basic human needs, but only if the official is aware of and deliberately indifferent to an objectively serious risk of harm. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008). The conditions at issue must "sufficiently serious" such that "a prison official's act or omission result[ed] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Only extreme deprivations, viewed in relation to contemporary standards of decency, make out a conditions-of-confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

Conditions that do not give rise to constitutional concerns on their own accord may nonetheless violate the Eighth Amendment if endured over a significant length of time, *see Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016), or where a multitude of conditions "have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise." *Giles v. Godinez*, 914 F.3d 1040, 1052 (7th Cir. 2019) (citations omitted). Absent a specific deprivation of a single human need, "nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment." *Wilson v. Seiter*, 501 U.S. 294, 305 (1991). Prison conditions may be uncomfortable and harsh without violating the Constitution. *Dixon v. Godinez,* 114 F.3d 640, 642 (7th Cir. 1997).

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts

from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

Plaintiff was housed in cell 504 for a relatively short period of time. He was provided with a different mattress as soon as one became available, disinfectant solution approximately once a week for cleaning purposes, and access to a shower three times per week. Plaintiff had soap, a towel, running water, and a functional toilet; he does not allege any other sanitation issues such as a problem with laundry or the lack of other hygiene supplies. Plaintiff was able to clean the area where the dead flies had been, he does not allege an active insect infestation, and the only reason the feces presumably remained on the walls and other areas was because Plaintiff refused to clean it. Plaintiff's lack of access to hot water does not violate the Constitution. *Hopkins v. Klindworth*, 556 F. App'x 497, 499 (7th Cir. 2014) (no constitutional right to hot water) (citing *Lopez v. Robinson,* 914 F.2d 486, 492 (4th Cir. 1990)).

The correctional officers under Defendants' supervision made every effort to help Plaintiff without indication that Defendants interfered with such efforts or ordered Plaintiff to remain in cell 504 despite feasible alternatives. The fact that Defendant Blackard had submitted a work order for repairs prior to the time Plaintiff was housed in that cell negates an inference that he acted with deliberate indifference, and nothing in the record suggests that Defendants caused any delay in fulfilling the work order. Prison officials attempted to find Plaintiff a different cell, but the only available cell did not have a working toilet.

These facts do not support a reasonable inference that the conditions Plaintiff encountered resulted in the deprivation of a basic human need. Unlike other cases where the Seventh Circuit has found a sufficient deprivation, Plaintiff had access to cleaning supplies, showers, running water, soap, and a towel. *See Gray*, 826 F.3d at 1006 (collecting cases). The record also does not support a reasonable inference that any prison official acted with deliberate indifference. The Court finds that no reasonable juror could conclude that Defendants subjected Plaintiff to inhumane conditions of confinement.

### Medical Claim

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. *Id.* at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient. *See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016). Prison guards and other non-medical personnel may be held liable for "intentionally denying or delaying access to medical care or intentionally interfering with treatment once prescribed." *Estelle*, 429 U.S. at 104.

"An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). A medical condition may also be objectively serious if "failure to treat it could result in further significant injury or the unnecessary and wanton infliction of pain." *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008).

Skin rashes that cause itching, a burning sensation, dry skin, or discomfort are not sufficiently serious for purposes of the Eighth Amendment. *See Holden v. Knight*, 2016 WL 696088, at *3 (N.D. Ind., filed Feb. 22, 2016) (skin rash that caused itching and had "hot spots" not objectively serious); *Smith v. Schwartz*, 2011 WL 2115831, at *3 (S.D. Ill., filed May 26, 2011) (chronic itching, athlete's foot, chafing, peeling skin, and painful, infected rash are not serious medical conditions); *Roberts v. Dawalibi*, 2017 WL 926772, at *5 (N.D. Ill., filed Mar. 8, 2017) (athlete's foot and jock itch are not objectively serious even if the conditions cause constant itching, burning, dry skin, and discomfort).

Plaintiff sought medical treatment for a rash on one occasion. The CMT who examined Plaintiff described the condition as a small, clogged pore on his back. The medical records provided do not indicate that Plaintiff's rash became infected while he was at Pontiac, no medical provided prescribed antibiotics for same, and the rash later resolved with the ointment Menard medical staff had prescribed. Plaintiff was able to obtain warm water for compresses from another inmate.

These facts do not permit a reasonable inference that Plaintiff suffered from a serious medical need or that prison officials acted with deliberate indifference. No reasonable juror could conclude that Defendants acted with deliberate indifference to a serious medical need.

**IT IS THEREFORE ORDERED:**

1) **Defendants' Motion for Summary Judgment [23] is GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated, with the parties to bear their own costs. Plaintiff remains responsible for the $350.00 filing fee.**

2) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. *See* Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398**

**(7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith.");** *Walker v. O'Brien***, 216 F.3d 626, 632 (7th Cir. 2000)(providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered this 4th day of March, 2020.


*s/Sara Darrow*
SARA DARROW
CHIEF U.S. DISTRICT JUDGE