E-FILED
Tuesday, 20 July, 2021 10:23:27 AM
Clerk, U.S. District Court, ILCD


In the
# United States Court of Appeals
For the Seventh Circuit

---

No. 20-1718

ADRIAN THOMAS,

*Plaintiff-Appellant*,

*v.*

JAMES S. BLACKARD and TODD PUNKE,

*Defendants-Appellees*.

---

Appeal from the United States District Court for the Central District of Illinois.
No. 1:18-cv-01122 — **Sara Darrow**, *Chief Judge*.

---

SUBMITTED MAY 24, 2021* — DECIDED JUNE 28, 2021

---

Before HAMILTON, SCUDDER, and KIRSCH, *Circuit Judges*.

SCUDDER, *Circuit Judge*. Adrian Thomas sued several prison officials at Pontiac Correctional Center in Illinois alleging they violated the Eighth Amendment by restricting him

* We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

for two months to a cell with feces on the walls, a mattress covered in human waste, a bunk bed with a hundred dead flies, and inadequate plumbing that caused him to develop a rash. Had the officials done nothing in response to Thomas's complaints, they would have violated the Constitution's prohibition on cruel and unusual punishment. But, relying on undisputed evidence showing that the prison responded to Thomas's concerns and medical needs, the district court entered summary judgment for the officials. We affirm.

**I**

Thomas moved to a new cell on October 24, 2017. By his account, the cell was disgusting. Thomas claimed there were feces, urine, and mold smeared on the walls, sink, and cell door; the mattress was soiled with feces and reeked of urine; there were roughly one hundred dead flies on the bunk bed; and the sink emitted only cold, black, and oily water. Thomas complained orally and in written grievances about these conditions until he was transferred to another prison two months later.

In the meantime, Pontiac officials mitigated most of the issues in Thomas's cell. After Thomas complained about his mattress, prison officials got him a new one within two weeks. In those two weeks, Thomas used his sheets and blanket to avoid contact with the soiled mattress. Thomas also received gloves, which allowed him to remove the dead flies. To address the feces smeared on the walls, Thomas had a towel for cleaning and received a cup of a disinfectant solution at least six times during his eight-week stay in the cell. The feces remained in his cell, however, as Thomas admits that he refused to use the solvent to clean the walls.

As for the lack of hot water, prison officials knew of the problem and ordered a repair in September 2017, before Thomas had even moved into the cell. While awaiting the repair, the officials allowed Thomas three hot showers per week, and the engineering staff attempted the repair in November but were unsuccessful. Pontiac's water supply underwent regular testing and met all environmental requirements.

Shortly after moving to the new cell, Thomas sought treatment for dry skin and a rash on his back. A health worker noted "a small clogged pore on [his] midback," recommended warm moist compresses, and told Thomas to return to sick call as needed. Thomas responded by saying he lacked access in his own cell to hot water, but he then managed to obtain hot water for the compresses from a neighboring inmate. Thomas sought no further medical care during the remainder of his time at Pontiac.

Thomas later invoked 42 U.S.C. § 1983 and sued multiple correctional officials, asserting Eighth Amendment claims regarding his cell conditions and medical treatment at Pontiac. At screening, the district court dismissed all but two defendants, James Blackard and Todd Punke. Following discovery, the district court entered summary judgment for Blackard and Punke, concluding that Thomas was exposed to the cell's poor conditions only briefly and the Pontiac staff addressed the issues without delay. As for the medical claim, the court determined that Thomas had failed to present evidence that his rash was serious enough to implicate the Eighth Amendment.

Thomas now appeals.

## II

### A

Although "the Constitution does not mandate comfortable prisons," it does mandate humane ones. *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981); see *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). By prohibiting cruel and unusual punishment, the Eighth Amendment imposes duties on prison officials to "provide humane conditions of confinement" and "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer*, 511 U.S. at 832. An official who fails to uphold these duties violates the Eighth Amendment upon exhibiting "deliberate indifference to a substantial risk of serious harm to an inmate." *Id.* at 828.

This deliberate indifference standard includes "both an objective and subjective component." *Daugherty v. Page*, 906 F.3d 606, 611 (7th Cir. 2018); see *Farmer*, 511 U.S. at 834. A prisoner challenging conditions of confinement must first show that the conditions were sufficiently serious as an objective matter, meaning "that they den[ied] the inmate 'the minimal civilized measure of life's necessities,' creating an excessive risk to the inmate's health and safety." *Isby v. Brown*, 856 F.3d 508, 521 (7th Cir. 2017) (internal citation omitted) (quoting *Rhodes*, 452 U.S. at 347). Second, in covering the subjective component of the inquiry, the inmate must prove that prison officials acted with deliberate indifference—that they knew of and disregarded this excessive risk of harm to the inmate. See *Farmer*, 511 U.S. at 834; *Williams v. Shah*, 927 F.3d 476, 480 (7th Cir. 2019).

Thomas challenges the district court's entry of summary judgment for the defendants. In this procedural posture, we

owe Thomas our own fresh look at the record, reviewing it in the light most favorable to him as the nonmoving party. See *Bridges v. Dart*, 950 F.3d 476, 478 (7th Cir. 2020).

### B

Thomas rooted his § 1983 claims in the allegedly inhumane conditions of his cell and the prison's treatment of his skin condition. Having undertaken our own review, we agree with the district court's assessment that no reasonable jury could conclude that Blackard and Punke violated Thomas's rights under the Eighth Amendment.

An essential teaching of *Farmer v. Brennan*—indeed the central essence of the Eighth Amendment—is that prisoners cannot be confined in inhumane conditions. See 511 U.S. at 832. Doing so deprives an inmate of the "minimal civilized measure of life's necessities" and satisfies the objective requirement for an Eighth Amendment claim. *Rhodes*, 452 U.S. at 347; see also *Vinning-El v. Long*, 482 F.3d 923, 924 (7th Cir. 2007) (collecting cases that clearly establish that holding an inmate in a cell smeared with feces and blood, and lacking running water or a mattress, creates an excessive risk to health and objectively amounts to the deprivation of humane conditions).

The Supreme Court reinforced these precise points in *Taylor v. Riojas*, holding that prison officials were not entitled to qualified immunity where they confined an inmate for four days in a cell covered floor to ceiling with feces, followed by two days in a frigid cell with a clogged drain overflowing with bodily waste, forcing the inmate to sleep naked on the floor in raw sewage. See 141 S. Ct. 52, 53–54 (2020) (per curiam). The Court had no reservations in concluding that such

conditions "violate the Eighth Amendment's prohibition on cruel and unusual punishment" and, even more, that "any reasonable officer should have realized that [the inmate's] conditions of confinement offended the Constitution." *Id.*

But to prove a violation of the Eighth Amendment, a prisoner must go beyond allegations and produce evidence not only of the inhumane conditions, but also that officials were subjectively aware of these conditions and refused to take steps to correct them, showing deliberate indifference. See *Farmer*, 511 U.S. at 837; *Daugherty*, 906 F.3d at 611 (affirming entry of summary judgment for prison officials because no evidence showed the officials were aware of the alleged unconstitutional conditions).

The initial cell conditions Thomas described, if true, were inhumane, as they posed an excessive risk to his health and deprived him of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347. Prison officials, we have underscored, must "provide inmates with 'reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities.'" *Hardeman v. Curran*, 933 F.3d 816, 820 (7th Cir. 2019) (quoting *Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016)). Thomas's assertions of feces-covered walls, a lack of hot water, hundreds of dead flies in his bed, and a mattress covered in human waste no doubt establish a material dispute on the objective prong of an Eighth Amendment claim. Indeed, these purported cell conditions are not far from the "deplorably unsanitary conditions" decried in *Taylor*. 141 S. Ct. at 53.

But that is not the end of the matter. Unlike in *Taylor*, Thomas failed to point to evidence that prison officials responded with deliberate indifference to the abysmal cell conditions. See *id.* at 53–54. To the contrary, the record shows that

officials reacted reasonably: Thomas promptly received a new, unsoiled mattress, several cups of disinfecting solvent to clean the walls, and gloves to remove the dead flies from his bunk bed. As for his complaint that his cell lacked hot water, Pontiac officials provided him with three hot showers per week while awaiting repair of the faucet. On this record, no reasonable jury could conclude these officials responded with deliberate indifference to Thomas's cell conditions. See *Farmer*, 511 U.S. at 844 (explaining that prison officials "may be found free from liability if they responded reasonably to the risk"); cf. *Johnson v. Pelker*, 891 F.2d 136, 139 (7th Cir. 1989) (suggesting that prison officials may have violated the Eighth Amendment where they ignored an inmate's request for cleaning supplies and water access while the inmate was housed for three days in a cell smeared with feces and without running water).

Thomas admits that he received disinfectant but contends that the cold and dirty running water in his cell was unfit to use with the solvent for cleaning. But Thomas furnished no evidence that he ever told Blackard or Punke that he could not use the cleanser with the cell's running water to remove the feces. So Thomas cannot establish that the officials' response was unreasonable. See *Daugherty*, 906 F.3d at 611–12 ("[N]o reasonable jury could find that [the defendants] acted with deliberate indifference" when "there is no evidence that either of them was specifically aware of the particular conditions forming the basis of [the plaintiff's] Eighth Amendment claim.").

In a grievance, Thomas also complained that the cell's tap water was undrinkable. Although a lack of drinking water can constitute a separate Eighth Amendment violation, see

*Hardeman*, 933 F.3d at 820–21, Thomas has not developed any argument to this effect on appeal. Nor does he dispute that the prison's water supply was regularly tested and met environmental requirements. In short, Thomas has not created a triable issue concerning a lack of clean drinking water.

We pause to highlight one particular statement Thomas made in his appellate brief. He stated he "endured 35 days in a cell without working or running water." This statement caught our attention, for a complete deprivation of running water for that length of time, coupled with the cell's filthy conditions, would offend the Eighth Amendment. See *id.* (collecting cases). But Thomas's assertion is belied by the record evidence: he testified at his deposition that the cell's faucet produced cold running water for the two months that he was confined there. Our review of the record shows that Thomas has failed to show that he lacked access to running water in his cell or otherwise for over a month.

C

Thomas pressed a second Eighth Amendment claim stemming from the prison's treatment of his skin condition. Prison officials can be liable for violating the Eighth Amendment when they display deliberate indifference towards an objectively serious medical need, meaning "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (citation omitted); see also *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

The district court correctly concluded that, based on undisputed evidence, no reasonable jury could find that

Thomas's skin condition presented an objectively serious medical need. Thomas had only a "small clogged pore" on his back that was treatable with warm compresses (which he received), and he never returned to sick call or suffered any lingering effects. Not "every ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim," and Thomas has not adduced any evidence that his clogged pore was sufficiently serious. *Gutierrez v. Peters*, 111 F.3d 1364, 1372 (7th Cir. 1997); see also *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"). Even if he had, Thomas also failed to identify any evidence showing that Blackard or Punke manifested deliberate indifference to his skin condition, a culpability standard akin to criminal recklessness. See *King*, 680 F.3d at 1018.

The conditions of confinement Thomas encountered at Pontiac are troubling. But prison officials took steps to address the inadequacies. Because Thomas has not produced evidence of deliberate indifference by Blackard and Punke, we AFFIRM.



# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

**FINAL JUDGMENT**

June 28, 2021

Before
DAVID F. HAMILTON, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

THOMAS L. KIRSCH II, *Circuit Judge*

| | |
|---|---|
| No. 20-1718 | ADRIAN THOMAS,<br>Plaintiff - Appellant<br><br>v.<br><br>JAMES S. BLACKARD and TODD PUNKE,<br>Defendants - Appellees |
| **Originating Case Information:** | |
| District Court No: 1:18-cv-01122-SLD<br>Central District of Illinois<br>District Judge Sara Darrow | |

The judgment of the District Court is AFFIRMED, with costs, in accordance with the decision of this court entered on this date.

CERTIFIED COPY

A True Copy
Teste:

Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

# UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

Everett McKinley Dirksen
United States Courthouse
Room 2722 - 219 S. Dearborn Street
Chicago, Illinois 60604



Office of the Clerk
Phone: (312) 435-5850
www.ca7.uscourts.gov

## NOTICE OF ISSUANCE OF MANDATE

July 20, 2021

To: Shig Yasunaga
UNITED STATES DISTRICT COURT
Central District of Illinois
Peoria, IL 61602-0000

| | |
|---|---|
| No. 20-1718 | ADRIAN THOMAS, Plaintiff - Appellant<br><br>v.<br><br>JAMES S. BLACKARD and TODD PUNKE, Defendants - Appellees |
| **Originating Case Information:** | |
| District Court No: 1:18-cv-01122-SLD<br>Central District of Illinois<br>District Judge Sara Darrow | |

Herewith is the mandate of this court in this appeal, along with the Bill of Costs, if any. A certified copy of the opinion/order of the court and judgment, if any, and any direction as to costs shall constitute the mandate.

RECORD ON APPEAL STATUS: No record to be returned

form name: **c7_Mandate** (form ID: **135**)